IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CARR, JR.,

                              Petitioner,                    OPINION and ORDER

        v.
                                                             21-cv-492-jdp
STATE OF WISCONSIN,

                              Respondent.

---

Petitioner Robert Carr, Jr. has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 following convictions for two counts of manufacture or delivery of heroin and one count of possession of a firearm as a felon. Carr raises a claim based on newly discovered evidence, three claims based on ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and a due process claim that his related to one of his claims of ineffective assistance. Respondent has moved to dismiss, contending that Carr's claim of newly discovered evidence does not warrant habeas relief and that Carr's claims of ineffective assistance are procedurally defaulted. I will grant the motion to dismiss because Carr's claim of newly discovered evidence is meritless and because his other claims are procedurally defaulted.

BACKGROUND

A.  Factual background

I take the following facts from the state court of appeals' decision affirming Carr's convictions and the trial court's order denying his motion for postconviction relief. *State v. Carr*, 2021 WI App 41 (2022) (per curiam). "Carr was arrested based on allegations that on

July 14, 2016, and July 29, 2016, Carr and his son, Nacarrente L. Carr[,] sold heroin to a confidential informant (CI)." *Id.* ¶ 2. The police searched the property where Carr and Nacarrente Carr resided and recovered "cocaine, heroin residue, drug paraphernalia, and a Remington .45 caliber semi-automatic handgun." *Id.* The state charged Carr with "two counts of manufacture or delivery of heroin between three and ten grams as a party to a crime, and one count of possession of a firearm by a felon." *Id.*

Carr went to trial. *Id.* ¶ 3. An investigator testified that, on July 14, 2016, a task force met with a CI to plan a controlled buy from Carr. *Id.* ¶ 4. According to the investigator, the CI called Carr and Nacarrente Carr to arrange the buy. *See id.* The state played voice recordings from the phone call and the investigator identified the voices of Carr and Nacarrente Carr based on familiarity with their voices. *See id.* at ¶¶ 3–4. The investigator also testified about the logistics of the controlled buy and how investigators maintained surveillance of Carr's residence on South 6th Street in Milwaukee, the CI, and the buy location. *See id.* at ¶¶ 5–6. Nacarrente Carr delivered the heroin to the CI. *See id.* ¶ 6.

The investigator testified that a similar controlled buy took place on July 29, 2016. According to the investigator, after the CI and Carr arranged a sale over the phone, two men left Carr's 6th Street residence in a maroon Blazer. *Id.* ¶ 7. The investigator saw Carr and Nacarrente Carr arrive at the buy location in the Blazer. *See id.* The state played voice recordings from the phone call and the investigator identified Carr's voice. *Id.* ¶ 8. "Although trial counsel raised concerns about which voices were identified, the trial court ruled that it was the jury's role to decide whose voices were heard." *Id.*

A sergeant testified about assisting with the investigation and surveillance of Carr on July 14 and July 29, which included meeting with the CI on July 14 and taking custody of the

purchased heroin. *Id.* ¶ 9. An officer testified that, on July 29, two men left the 6th Street residence in a maroon Blazer and drove to the buy location. *Id.* ¶ 10.

Nacarrente Carr, a state's witness, testified that Carr arranged the July 14 heroin buy over the phone but that he delivered it to the CI. *See id.* ¶ 11. Nacarrente Carr also testified that Carr arranged the July 29 buy, that they both went to the buy location, and that the CI handed him the money but obtained the heroin from Carr. *Id.* ¶ 12.

Nacarrente Carr testified that the handgun found at the South 6th Street residence belonged to Carr. Nacarrente Carr provided other incriminating testimony, which included identifying Carr's voice on the July 14 and July 29 phone calls. *See id.* ¶ 13. Nacarrente Carr added that the state charged him for the same conduct and that he was testifying pursuant to a cooperation agreement. *See id.* ¶¶ 14–15.

An officer who searched Carr's residence testified that narcotics, drug paraphernalia, ammunition, a handgun, and "numerous identifiers" of Carr were found. *Id.* ¶ 16. The officer testified that, although the maroon Blazer parked at the residence had a different license plate than the maroon Blazer involved in the July 29 buy, registration records show that both plates "were registered to a Blazer with the same VIN number." *Id.* ¶ 17. A lab analyst testified that the CI received heroin and fentanyl in the July 14 buy and heroin in the July 29 buy. *See id.* ¶ 18. A forensic scientist testified that "a Pyrex glass measuring cup" recovered from Carr's residence contained Carr's fingerprint. *Id.* ¶ 19. A DNA analyst testified that Carr "was the source of the DNA" recovered from "the swabs of the trigger, slide, and grip" of the handgun. *See id.* ¶ 20. Carr stipulated that, because of a prior felony conviction, he was prohibited from possessing a firearm at the time of his arrest. *See id.*

**B.  Procedural background**

The jury found Carr guilty on all charges. *Id.* ¶ 21. The trial court sentenced Carr to 15 years' imprisonment. *See id.* ¶ 23.

Carr filed a motion for postconviction relief under Wis. Stat. § 974.02 and Wis. Stat. § 809.30. *See id.* ¶ 24; *see also Socha v. Boughton*, 763 F.3d 674, 682 (7th Cir. 2014) ("Wisconsin allows a criminal defendant to make a postconviction motion immediately after sentencing."). Carr asserted a claim of newly discovered evidence based on Nacarrente Carr's sworn statement recanting his trial testimony and the CI's sworn statement alleging that the state's witnesses misrepresented his statements during the transactions. *See Carr*, 2021 WI App 41, ¶ 24; Dkt. 10-1. The trial court denied Carr's motion for postconviction relief on the merits without a hearing. *See Carr*, 2021 WI App 41, ¶ 28.

Carr appealed his judgment of conviction and the trial court's order denying his motion for postconviction relief. *Id.* ¶ 1. The state court of appeals rejected Carr's claims on the merits, affirming the judgment of conviction and the trial court's order. *See id.* ¶¶ 26, 56. In rejecting Carr's claim of newly discovered evidence, the court reasoned: "The statements from both Nacarrente [Carr] and the CI are refuted by the record, including the testimony from law enforcement officers about their surveillance of Carr, Nacarrente [Carr], and the CI and the audio recordings played at trial in which the trial court made clear it was the jury's role to determine who was speaking on the recordings." *Id.* ¶ 36. The court of appeals added: "Carr simply cannot show that the outcome would be different if Nacarrente [Carr] and the CI testified consistent with the contents of these affidavits at trial. The weight of the trial evidence is simply too strong for this evidence to raise reasonable doubt." *Id.* ¶ 37. Similarly, in rejecting

Carr's claims of ineffective assistance, the court of appeals characterized the evidence as "overwhelming." *See id.* ¶¶ 44, 48.

Represented by Diane Lowe, Carr sought review in the state supreme court. *See* Dkt. 7 at 3; Dkt. 18-1. Carr raised only his claim of newly discovered evidence in his petition for review. *See* Dkt. 18-1. After initially dismissing the petition as untimely, the state supreme court granted a habeas corpus petition filed by the Wisconsin public defender, reinstated the petition, and denied it in a summary order. *See* Dkt. 7-2. Later, the United States Supreme Court denied Carr's petition for writ of certiorari. *Carr v. Wisconsin*, 142 S. Ct. 1686.

Carr filed his amended petition and two supporting memoranda in this court. *See* Dkt. 7; Dkt. 10; Dkt. 11. In his amended petition, Carr raises a claim of newly discovered evidence and three claims of ineffective assistance of trial counsel. Dkt. 7 at 5–10. In his first claim of ineffective assistance, Carr contends that counsel failed to investigate the identity of a second CI allegedly involved in the July 29 controlled buy. Dkt. 7 at 7. In his supporting memoranda, as relevant here, Carr contends that the state's failure to disclose the identity of the second CI violated due process and the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957). *See* Dkt. 10 at 10; Dkt. 11 at 3–8. Carr has not alleged, and the record does not reflect, that Carr raised this due process claim in the state court of appeals or in his petition for review. Later, Carr sought appointment of counsel. Dkt. 16.

Respondent moved to dismiss. *See* Dkt. 17 and Dkt. 18. Respondent contends that Carr's claim of newly discovered evidence, or standalone actual innocence claim, is not "cognizable" under § 2254 and that his claims of ineffective assistance are procedurally defaulted because he failed to raise them in his petition for review in the state supreme court. *See* Dkt. 18 at 2–3.

5

Carr contends that his claim of newly discovered evidence warrants habeas relief because, in his estimation, there is a reasonable probability that the jury would not have convicted him if presented with Nacarrente Carr's recantation and the CI's testimony. *See* Dkt. 21 at 7. Carr states that, in view of the newly discovered evidence, his conviction may be a "miscarriage of justice." *See id.* at 5. Carr does not dispute that he failed to raise his claims of ineffective assistance in the state supreme court but contends that this failure should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and because Lowe provided ineffective assistance by untimely filing his petition for review and failing to raise his claims of ineffective assistance of counsel in it. *See* Dkt. 21 at 7–14; Dkt. 22. As relevant here, respondent contends in its reply that *Martinez* does not apply to Wisconsin prisoners and that Lowe did not provide ineffective assistance because Carr had no right to counsel at the petition-for-review stage. *See* Dkt. 25 at 2–3.

Meanwhile, Carr requested an order prohibiting the Wisconsin Department of Corrections (DOC) from transferring him to another prison while he litigates this case. Dkt. 24. Respondent opposed this motion on various grounds. *See* Dkt. 26.

Carr moved for release on bail pending decision on his amended petition, primarily because he "feel[s] confident" that he will prevail in this case. *See* Dkt. 27 at 2. Respondent filed a brief in opposition and Carr replied. Dkt. 28 and 29.

Carr filed a motion to hold his amended petition in abeyance while he returns to state court and exhausts his claims of ineffective assistance. *See* Dkt. 30 (discussing *Rhines v. Weber*, 544 U.S. 269 (2005)). Respondent opposes a *Rhines* stay. Dkt. 31. As relevant here, respondent contends that *Rhines* does not apply because Carr's claims are procedurally defaulted, making them "technically exhausted." *See* Dkt. 31 at 2. In his reply, Carr states that he would like "to

withdraw the motion to stay and abey," though his reasoning suggests otherwise. *See* Dkt. 32 at 1–2. Carr also contends that the state waived the defense of procedural default by declining to respond to his petition for writ of certiorari in the Supreme Court. *See id.* at 2–3; Dkt. 32-2.

Carr moved to supplement the record with an affidavit he allegedly wrote in 2019 contending that trial counsel provided ineffective assistance. *See* Dkt. 33; Dkt. 33-1. Carr contends that, because Lowe knew about the affidavit but failed to raise his claims of ineffective assistance in the petition for review, she "abandon[ed]" him, thus excusing his procedural default. *See* Dkt. 33 at 1–2. Respondent opposed the supplement, contending that the affidavit is not relevant to excusing the procedural default because Carr "had no right to counsel" in the state supreme court. Dkt. 34 at 2. In his reply, Carr appears to concede that he had no right to counsel at the petition-for-review stage but contends that *Martinez* applies. *See* Dkt. 35 at 1–2.

## ANALYSIS

### A.  Procedurally defaulted claims

I cannot grant Carr's petition unless he "has exhausted the remedies available in the courts of the State." *See Wilson v. Cromwell*, 58 F.4th 309, 319 (7th Cir. 2023). To fairly present his federal claims in state court, Carr must assert them "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in postconviction proceedings." *See id.* This "complete round rule" means that Carr must raise his federal claims at each level of the Wisconsin court system, including any level at which review is discretionary instead of mandatory. *See id.*

After conviction, Wisconsin defendants must bring claims of ineffective assistance in motions for postconviction relief under Wis. Stat. § 974.02, which they must file in the trial

court. *See Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003). If the trial court denies the motion, the defendant must "file[] a consolidated appeal of the judgment and the postconviction order" in the state court of appeals. *See Garcia v. Cromwell*, 28 F.4th 764, 766 (7th Cir. 2022); *see also Lee-Kendrick v. Eckstein*, 38 F.4th 581, 587 (7th Cir. 2022) ("[A] claim of ineffective assistance of counsel under [Wis. Stat.] § 974.02 is part of a direct appeal rather than a request for collateral review."); Wis. Stat. § 809.30(2). If the appeal is unsuccessful, defendants must present their federal claims to the state supreme court in petitions for review to exhaust them. *See Wilson*, 58 F.4th at 319; *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015).

If a habeas petitioner has failed to exhaust his federal claims and the opportunity to raise those claims in state court has passed, the petitioner has procedurally defaulted those claims for purposes of federal habeas review. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (federal habeas courts "generally decline to hear any federal claim that was not presented to the state courts consistent with the State's own procedural rules." (alteration adopted)). For procedural default to apply, the state procedural rule that would bar further consideration of the federal claim in state court must be "independent and adequate." *See Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). The state procedural rule is independent "if it does not depend on the merits of the petitioner's claim." *See Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021). "State rules count as adequate if they are firmly established and regularly followed." *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curiam).

Carr raised his claims of ineffective assistance in his motion for postconviction relief and on direct appeal. But he did not raise them—or his related due process claim—in his

petition for review in the state supreme court. Because a petition for review must be filed within 30 days of the state court of appeals' decision, Carr cannot return to the state court supreme court to exhaust these claims. *See* Wis. Stat. § 808.10(1). This procedural bar is independent and adequate. *See Wilson*, 58 F.4th at 319; *Foster*, 786 F.3d at 505.

Nor could Carr raise these claims in a collateral motion under Wis. Stat. § 974.06. The state supreme court has interpreted § 974.06 "to exclude all issues that were or could have been raised in a § 974.02 postconviction motion or appeal, including constitutional issues, unless the defendant provides 'sufficient reason' for not raising the issues in that earlier proceeding." *Page*, 343 F.3d at 906 (quoting *Escalona–Naranjo*, 185 Wis. 2d 168, 181 (1994)). "In an appropriate case, ineffective assistance of postconviction counsel may qualify as a sufficient reason to excuse a procedural default [for purposes of a § 974.06 motion]." *See Garcia*, 28 F.4th at 767 (citing *State v. Romero-Georgana*, 360 Wis. 2d 522, 542 (2014)). But this "gateway to merits review of a defaulted claim carries a heightened pleading burden" and would apply only if Carr provided "factual allegations showing that the defaulted claims were 'clearly stronger' than the issues postconviction counsel chose to present." *See id.* (quoting *Romero-Georgana*, 360 Wis. 2d at 545).

Carr has not met this heightened pleading burden. Carr does not allege that his ineffective assistance and due process claims are clearly stronger than his newly discovered evidence claim, and his filings do not suggest that they are. In Wisconsin, a conviction may be set aside based on newly discovered evidence. *Carr*, 2021 WI App 41, ¶ 30. The state court of appeals' decision does not suggest that Carr's claims of ineffective assistance are clearly stronger than his newly discovered evidence claim. If Carr tried to raise his defaulted claims in a § 974.06 motion, the state courts would deny it under *Escalona–Naranjo* and *Romero-Georgana*.

These state procedural bars are independent and adequate. *Eckstein*, 38 F.4th at 588–89; *Whyte v. Winkleski*, 34 F.4th 617, 624–25 (7th Cir. 2022); *Garcia*, 28 F.4th at 767, 774–75.

A petitioner may overcome a procedural default by showing in federal court "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. Whether cause exists generally turns on whether the factual or legal basis for the claim "was not reasonably available to counsel," or whether "some interference by officials" made it "impracticable" for counsel to comply with the state procedural rule. *See Moore v. Casperson*, 345 F.3d 474, 486 (7th Cir. 2003). Ineffective assistance of counsel may "constitute cause to set aside a procedural bar." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010).

Carr does not allege, and the record does not reflect, that the factual or legal basis of his defaulted claims was not reasonably available to Lowe or that interference by state officials prevented her from raising these claims in the petition for review. Carr contends that Lowe provided ineffective assistance because she failed to raise the defaulted claims in the petition for review. But, for ineffective assistance to excuse a procedural default in federal court, "there must be a constitutional right to assistance of counsel in the state proceeding." *Wayerski v. Jess*, No. 20-CV-88-BBC, 2020 WL 2218857, at *2 (W.D. Wis. May 7, 2020). "[T]here is no federal constitutional right to the effective assistance of counsel in a discretionary appeal such as [Carr's] petition for review to the Wisconsin Supreme Court; the constitutional right to counsel is guaranteed to a defendant only for trial and for the first appeal as of right." *Young v. Dittmann*, No. 14-CV-434, 2014 WL 6819348, at *2 (E.D. Wis. Dec. 2, 2014). So Lowe's

alleged ineffective assistance cannot excuse the procedural default. *See Wayerski*, 2020 WL 2218857, at *2; *Young*, 2014 WL 6819348, at *2.[1]

In appropriate cases, an attorney's errors "that do not constitute a denial of the constitutional guarantee of effective assistance of counsel nonetheless establish cause to excuse default of a state procedural rule." *Young*, 2014 WL 6819348, at *2 (citing *Trevino v. Thaler*, 569 U.S. 413 (2013); *Martinez*, 566 U.S. 1; *Maples v. Thomas*, 565 U.S. 266 (2012)). *Martinez* held that, when state law requires ineffective assistance claims to be raised "in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. *Trevino* extended *Martinez* to "state procedural framework[s]" that make it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. at 429. *Martinez* and *Trevino* do not apply to Wisconsin petitioners because they must "raise claims of ineffective assistance of trial counsel as part of a consolidated and counseled *direct* appeal." *See Brown v. Brown*, 847 F.3d 502, 510 n.1 (7th Cir. 2017) (emphasis in original); *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014).

In *Maples*, the petitioner's postconviction attorneys abandoned him without notice, causing the time to appeal the trial court's denial of his habeas petition to expire. *See* 565 U.S.

---

[1] Even if it could, "the claim of ineffective assistance must be raised in state court before it can suffice on federal habeas relief as cause to excuse the default of another claim." *Whyte*, 34 F.4th at 624. Carr argued in the state supreme court that Lowe provided ineffective assistance by failing to timely file his petition for review, not by failing to raise the defaulted claims in the petition.

at 270–71. The court held that this abandonment was an extraordinary circumstance excusing the petitioner's procedural default. *See id.* at 289; *Nash,* 740 F.3d at 1077.

Carr has not shown that Lowe abandoned him, causing the procedural default of his claims. Lowe filed Carr's direct appeal and petition for review. The state supreme court initially dismissed the petition as untimely, but Lowe informed Carr of this decision, *see* Dkt. 22 at 1, and the petition was later reinstated. These facts do not suggest that Lowe abandoned Carr. In any event, there is no indication that Lowe's initial failure to timely file the petition for review caused her failure to raise the defaulted claims. *Maples* does not apply.

Carr suggests that, in view of his claim of newly discovered evidence, it would be a "miscarriage of justice" if I did not review his claims on the merits. *See* Dkt. 21 at 5. I may excuse Carr's procedural default if he shows "that failure to consider the claims will result in a fundamental miscarriage of justice." *Thomas v. Williams,* 822 F.3d 378, 386 (7th Cir. 2016). The miscarriage of justice "exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted.'" *Wilson,* 58 F.4th at 319. To establish an actual innocence claim, Carr "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327 (1995). For an actual innocence claim to be credible, Carr must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See id.* at 324.

The presentation of new and credible evidence does not automatically satisfy the *Schlup* standard for actual innocence. *Wilson,* 58 F.4th at 321. Courts must consider the new evidence "along with the existing evidentiary record." *Id.* From there, courts "make a probabilistic

12

determination about what reasonable jurors would do." *Id.* "[T]he introduction of new eyewitness testimony does not amount to a showing of actual innocence when strong and credible testimony to the contrary remains." *Id.* at 322.

Carr contends that Nacarrente Carr's recantation and the CI's testimony undermine his conviction. But, as the state court of appeals determined, the state presented strong and credible evidence of Carr's guilt, "including the testimony from law enforcement officers about their surveillance of Carr, Nacarrente [Carr], and the CI and the audio recording played at trial in which the trial court made clear it was the jury's role to determine who was speaking on the recordings." *See Carr*, 2021 WI App 41, ¶ 36. The state also presented evidence showing "Carr's fingerprint on the Pyrex measuring cup and [] DNA on the firearm" found at his residence. *See id.* ¶¶ 16, 20, 38. Because a "conflict between trial testimony remains" despite the new evidence, Carr has not shown that he is actually innocent. *See Wilson*, 58 F.4th at 322.

Carr contends that respondent waived its procedural default defense by declining to respond to his petition for writ of certiorari in the Supreme Court. But procedural default is a defense to review of a federal habeas petition on the merits, not a defense to review of the state court's denial of Carr's petition for review. Carr has not shown that respondent waived or forfeited this defense.

Carr's ineffective assistance and due process claims are procedurally defaulted.

## B. Newly discovered evidence claim

Carr contends that his newly discovered evidence shows that he is actually innocent. The state court of appeals rejected this claim on the merits.

Federal courts may grant habeas relief only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010). The petitioner has the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002)

The Supreme Court has not "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence [in a non-capital case]." *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *see also Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021); *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018). Because the Supreme Court has yet to hold that a prisoner may be entitled to habeas relief based on a standalone actual innocence claim in a non-capital case, Carr has not shown that the state court of appeals unreasonably rejected this claim. *See White v. Woodall*, 572 U.S. 415, 419 (2014) ("clearly established Federal

14

law" under § 2254(d)(1) "includes only the holdings . . . of [the Supreme] Court's decisions");
*Hall v. Zenk*, 692 F.3d 793, 799 (7th Cir. 2012) ("In considering whether clearly established
federal law exists with respect to a particular issue, we may only consider the holdings of the
U.S. Supreme Court . . . ."). In any case, Carr bases his newly discovered evidence claim on his
belief that the new evidence is more reliable than the state's contrary trial testimony and
physical evidence, which fails to show that court of appeals' decision was unreasonable. Nor
has Carr identified any factual error by the state court of appeals, much less shown that this
error was unreasonable. *Cf. State v. Plude*, 2008 WI 58, ¶ 33 (court's determination of whether
the jury would have had a reasonable doubt as to the defendant's guilt had it heard the newly
discovered evidence is a question of law); *State v. McAlister*, 2018 WI 34, ¶ 36 (same). The state
court of appeals' rejection of this claim was reasonable.

I will grant respondent's motion to dismiss because the state court of appeals' rejection
of Carr's newly discovered evidence claim was reasonable and because his other claims are
procedurally defaulted. No evidentiary hearing is warranted because, as my analysis shows,
"the record . . . precludes habeas relief." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

**C.  Other motions**

I will deny as moot Carr's motion for an order prohibiting the DOC from transferring
him to another prison while he litigates this case and motion for release on bail pending
decision on his amended petition. I will deny Carr's motion to hold his amended petition in
abeyance while he returns to state court to exhaust his claims. As explained, Carr cannot do
this because his claims are procedurally defaulted. I will grant Carr's motion to supplement the
record with his 2019 affidavit in part because I reviewed this motion and affidavit in denying
his habeas petition.

Carr also moved for the appointment of counsel. I may appoint counsel for Carr if "the interests of justice so require" and Carr is "financially eligible." 18 U.S.C. § 3006A(a)(2)(B). In evaluating what the interests of justice require, I must consider whether Carr can obtain justice without an attorney in light of his ability and the difficulty of the case and whether Carr would have had a reasonable chance of winning with a lawyer at his side. *See e.g.*, *Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir. 2000).

Carr's pleadings and motions show that he understood the proceedings and could articulate his arguments, and there is no indication that Carr could have prevailed had counsel represented him. I will deny Carr's motion to appoint counsel.

## D. Certificate of appealability

Because Carr seeks relief under § 2254, he may appeal this order only if he obtains a certificate of appealability. I may issue a certificate of appealability only if Carr makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability on his procedurally defaulted claims, Carr must demonstrate that reasonable jurists would debate whether my procedural ruling is correct and whether the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). To obtain a certificate of appealability on his claim of newly discovered evidence, Carr "must demonstrate that reasonable jurists would find [my] assessment of the constitutional claims debatable or wrong." *Id.* at 484. Because Carr cannot make this showing, I deny a certificate of appealability. Carr may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Respondent's motion to dismiss, Dkt. 17, is GRANTED. The amended habeas petition, Dkt. 7, is DENIED and a certificate of appealability is DENIED.

2. Petitioner's motion to appoint counsel, Dkt. 16, is DENIED.

3. Petitioner's motion for an order prohibiting the Department of Corrections from transferring him to another prison, Dkt. 24, is DENIED as moot.

4. Petitioner's motion for release on bail, Dkt. 27, is DENIED as moot.

5. Petitioner's motion to hold this case in abeyance, Dkt. 30, is DENIED.

6. Petitioner's motion to supplement, Dkt. 33, is GRANTED in part as specified in this order.

7. The clerk of court is directed to enter judgment and send petitioner a copy of this order.

Entered March 2, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge